# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____
                                    )
RONALD QUALLS                       )
                                    )
      Petitioner,               )
                                    )
v.                                  )        Civil Action No. 05-10888-NMG
                                    )
LOIS RUSSO,                         )
                                    )
      Respondent.               )
_____)

## MEMORANDUM IN OPPOSITION TO
## PETITION FOR WRIT OF HABEAS CORPUS

The respondent hereby submits this memorandum in opposition to the petition for writ of habeas corpus filed by Ronald Qualls ("the petitioner").  In his habeas petition, the petitioner claims that the admission at trial of testimony regarding the murder victim's statements to the petitioner was a denial of the petitioner's Sixth Amendment right of confrontation, as outlined in the recent Supreme Court case of *Crawford v. Washington*, 124 S.Ct. 1354 (2004).

The petitioner's claim must be denied, however, because the petitioner has failed to present his argument regarding the *Crawford* case to the Massachusetts Supreme Judicial Court, and has therefore failed to exhaust his remedies in state court, as he must do before bringing his claim in federal court.  The habeas petition must also be denied because the trial court's decision to admit the testimony was a ruling of state law, and errors of state law, as opposed to constitutional questions, cannot form the basis for a habeas corpus claim.  Moreover, even if this Court were to examine the merits of the petitioner's Sixth Amendment claim, the claim would still fail because the petitioner's Confrontation Clause rights were not violated: the testimony

which the petitioner challenges was not hearsay, because it was not admitted for its truth, but rather for an alternate purpose. Accordingly, the concerns addressed by the Supreme Court in *Crawford* are not present in the instant case. Finally, the petition must be dismissed because any violation of the petitioner's Sixth Amendment rights which did occur can only be seen as a harmless error when viewed in light of the trial proceedings as a whole.

### STATEMENT OF THE CASE

On November 10, 1992, a Suffolk County grand jury returned indictments against the petitioner, charging him with two counts of first degree murder (G.L. c. 265, § 1), assault and battery by means of a dangerous weapon (G.L. c. 265, § 15A(b)), assault by means of a dangerous weapon (G.L. c. 265, § 15B(b)), and unlawful possession of a firearm (G.L. c. 269, § 10(a)). *See* Docket Sheet for the Suffolk Superior Court Criminal case Docket Number SUCR1992-11850, attached hereto as Exhibit 1 (hereinafter, "Docket Sheet"), pp. 12-13.

After a jury trial which was held from October 25 to November 3, 1993, the petitioner was convicted on all counts on which he was charged. *See* Docket Sheet, Ex. 1, pp. 5-6. On June 6, 1997, the Massachusetts Supreme Judicial Court ("the SJC") reversed the petitioner's convictions. *See Commonwealth v. Qualls*, 425 Mass. 163 (1997).

The petitioner was tried on the same charges before a second jury from March 23 to March 31, 1998. *See* Docket Sheet, Ex. 1, pp. 10-11. On March 31, 1998, the jury returned guilty verdicts on all counts with which the petitioner was charged. *Id.,* p. 11.

On that same day, the petitioner was sentenced to two consecutive life terms for first degree murder, and was sentenced to terms of 9 to 10 years for the conviction of assault and battery by means of a dangerous weapon and 3 to 5 yeas for the conviction of unlawful

possession of a firearm, both of which were to run concurrently with his life sentences. Docket Sheet, Ex. 1, p. 11.   The petitioner's conviction for assault by means of a dangerous weapon was placed on file with the petitioner's consent. *Id.*

The petitioner filed a timely notice of appeal on April 10, 1998, and his appeal was docketed in the SJC on August 5, 1999. *See* Docket Sheet, Ex. 1, p. 11; *see also* Brief and Argument for the Commonwealth, *Commonwealth v. Qualls*, SJC Docket No. SJC-08088, filed with the petitioner's supplemental materials as Exhibit B, p. 6.   The SJC affirmed the petitioner's convictions on December 15, 2003.  *See Commonwealth v. Qualls,* 440 Mass. 576 (2003).

On July 20, 2004, the petitioner filed a motion for, *inter alia*, a new trial in the Superior Court.  *See* Docket Sheet, Ex. 1, p. 12.   The motion was denied on September 7, 2004. *Id.*

The petitioner filed the instant petition for a writ of habeas corpus on April 29, 2005.

## STATEMENT OF FACTS

The SJC's recitation of facts is entitled to a presumption of correctness under 28 U.S.C. § 2254(e)(1).  *See Coombs v. Maine*, 202 F.3d 14, 18 (1st Cir. 2000); *Avellar v. DuBois*, 30 F.Supp.2d 76, 79 (D.Mass. 1998); *Otsuki v. DuBois*, 994 F.Supp. 48, 51 & n.3 (D.Mass. 1998); *cf. Sumner v. Mata*, 449 U.S. 539, 545-46 (1981)(holding that the presumption of correctness under former habeas statute applied to "factual determinations made by state courts, whether the court be a trial court or appellate court").   This deference extends to inferences drawn by the state court from those factual determinations as well.  *See Parke v. Raley*, 506 U.S. 20, 35 (1992); *Flores v. Marshall*, 53 F.Supp.2d 509, 514 (D.Mass. 1999).

The SJC's recitation of the facts of the instant case was as follows:

The jury could have found the following facts.  On the evening of October 2, 1992, Leroyal Holmes, Fred Monroe, and the victims, Ronald Price, known as

3

"Dallas," and his brother, Roosevelt Price, known as "Tony," got together at the Biarritz bar in the Roxbury section of Boston.  There, Dallas saw the [petitioner][1] and told him that he had heard that the [petitioner] had been looking for him.  The [petitioner] said that he did not know who Dallas was.  Dallas replied that he was the person who had stabbed the [petitioner's] cousin.  A fist fight between the two ensued.  During the fight, Tony became involved, grabbed the [petitioner], and placed him in a headlock.  An off-duty police detective and a bouncer at the bar broke up the fight, and the detective escorted the [petitioner] outside.

Back inside the bar, Dallas approached the [petitioner's] companion, James Earl "Junior" Williams,[2] and asked him why he was on the [petitioner's] side.  Dallas protested that Williams was "supposed to be" his cousin.  Williams said that he was "down" with the [petitioner] because the [petitioner] put his "life on the line" for Williams.

Moments later, outside the bar, the [petitioner] got into a fight with Tony.  During the fight, the [petitioner] pulled out a knife and swung it at Tony.  The [petitioner] then got into the front passenger seat of Williams's automobile, a dark-colored Ford Escort, and the two drove off.

Tony, Dallas, Holmes, and Monroe went to another bar.  They encountered Donna Carrington and Mattie Buford, Monroe's girl friend, in the bar's parking lot.  The men told the women to park Carrington's Geo Tracker, a two-door vehicle, in the lot  while they went into the bar.  After being denied admission because the bar was closing, the men returned to the parking lot, where Tony told the group that he did not feel well.

The group discovered that Tony had been stabbed near and beneath his right armpit.  Tony and Dallas got into the back seat of Carrington's vehicle so that she could drive Tony to a nearby hospital.  Tony sat in the back seat behind Carrington, and Dallas sat in the right rear passenger seat next to Tony.

As Tony and Dallas were getting into the vehicle, Dallas observed Williams's automobile drive by.  Monroe saw that Williams was the driver and that the [petitioner] was a passenger. Concerned, Holmes walked over to where Williams's automobile was headed and the [petitioner] "popped up" in front of

---

[1] The SJC noted that "[t]he [petitioner] was five feet, nine inches tall, and weighed 140 pounds." *Commonwealth v. Qualls,* 440 Mass. 576, 578 n.2 (2003).

[2] The SJC observed that "Williams was five feet, nine inches tall, weighed 210 pounds, and was darker skinned than the [petitioner]." *Commonwealth v. Qualls,* 440 Mass. at 578 n.3.

him.  Holmes grabbed the [petitioner] and told him to "let it go."  The [petitioner] pulled out a .38 caliber revolver and pointed it at Holmes, stating that he would blow Holmes's head off if he did not get out of the way.  As the [petitioner] approached Carrington's vehicle, Holmes shouted that the [petitioner] was "strapped," meaning that he was armed.

Hearing Holmes's warning, Buford ran across the street. Monroe ran to the corner of the parking lot.  The [petitioner] approached the rear of Carrington's vehicle and fired multiple shots into the plastic covering in the back of the vehicle, then, from the front passenger side of the vehicle, through the open window, fired more shots into the back seat.  The [petitioner] then fled on foot, running past Buford.

Monroe ran to Carrington's vehicle and jumped in. Carrington drove to Tony's apartment.  Tony went into the apartment. Dallas was slumped over in the back seat, blood running out of his mouth.  Holmes, who ran behind the vehicle as it drove off, got into the passenger seat and told Monroe to get inside the vehicle and drive Dallas to a hospital.  Dallas died within minutes of his arrival.

Police and emergency medical workers went to Tony's apartment.  Tony approached the police and told them that Junior Williams had shot him, adding that Junior drove a black or blue Ford Escort.  He also gave them Junior's address, and told them that Junior had a sister who lived on Ruggles Street.  He stated that two males had been in the Ford Escort when it drove by.  Tony was transported to a hospital, where he subsequently died.

Shortly after 4 A.M., October 3, 1992, the police stopped Williams's Ford Escort. During the stop, Williams pointed at Holmes, who happened to be walking by. Earlier, Holmes had fled the hospital because he did not want anyone questioning him. The police brought both men in for questioning separately.  Williams was wearing a gray sweatshirt.

At the police station, Holmes identified the [petitioner] as the shooter from a photographic array.  He stated that the [petitioner] had been wearing a blue "Members Only" jacket.  Monroe initially gave the police false identification information because he did not want to get involved.  However, he later identified the [petitioner] as the shooter from a photographic array.  Monroe told police that the [petitioner] had been wearing a dark-colored hooded sweatshirt.

Approximately one week after the shootings, Buford identified the [petitioner] as the man she saw approach Carrington's vehicle at the time of the shooting. Buford did not actually observe the [petitioner] shoot into, or at, Carrington's vehicle, but, after hearing the warning that the [petitioner] was "strapped," saw

5

the [petitioner] run through the parking lot over to the back of the Tracker.  She heard gunshots and then saw the [petitioner] run away from the vehicle. The [petitioner] ran right past her.

Carrington was not able to identify the [petitioner] as the shooter.  She described the shooter, however, as a black male, about eighteen or nineteen years of age; about five feet, seven inches tall; medium build; and wearing a dark blue Champion sweatshirt.  She described the driver of the Ford Escort as darker skinned than the passenger, and identified Williams's Ford Escort as the automobile that drove by them prior to the shooting.

Both Dallas and Tony died of gunshot wounds to the chest.  One of the shots fired at Dallas had been at close range.  Of the three .38 caliber bullets recovered from their bodies, at least one from each body had been fired from the same weapon.

The gray sweatshirt that Williams had been wearing when he had been apprehended had several very small stains on the front and back which were later determined to be type B human blood.  Williams, Dallas, and Tony had type B blood.  The stains did not penetrate through the sweatshirt and were consistent with someone getting a paper cut and then wiping a hand on a shirt.  There had been no blood on the back window of Carrington's vehicle, which suggested that blood had not passed through the window.  A leather coat, such as the one Dallas had been wearing when he was shot, could prevent blood splatter or spurting from a gunshot wound.

The [petitioner] had type A blood.  Type A blood was found on the front passenger seat of Williams's Ford Escort, and on the passenger door handle.  The [petitioner's] fingerprint was found on the outside of the passenger door window.

The jury could also have found that the [petitioner] exhibited consciousness of guilt.  In the spring of 1993, the [petitioner] telephoned Holmes and told him to tell Monroe and Buford that they had picked the wrong person.  In March, 1998, Holmes encountered the [petitioner] in downtown Boston, after Holmes had met with the [petitioner's] attorney at the court house.  The [petitioner] told Holmes that he knew where Holmes worked and lived, and also knew where Holmes's son's mother lived.  The [petitioner] added that the court was trying to put him away for life and that he had nothing to lose.  A couple of the [petitioner's] friends followed Holmes to the bus stop.  Holmes took a taxi cab, and subsequently relocated.

The [petitioner] did not testify.  His defense was that Williams was the shooter. He called two police officers to testify.  The first officer testified that Dallas had had a confrontation with Williams at the Biarritz bar, and that Monroe initially

6

had told him that he did not know the identity of the shooter.  The second officer
confirmed that Tony had named Williams as the shooter.

*Commonwealth v. Qualls,* 440 Mass. at 578-581.

## ARGUMENT

**I.    The Petitioner's Claim is Barred Because He Did Not Present His Claim to the
Massachusetts Supreme Judicial Court and Therefore His Claim Is Unexhausted.**

It is well established that "a federal court should not consider questions posed in a habeas

petition until the 'power of the highest state court in respect to such questions' has been

exhausted." *Mele v. Fitchburg District Court,* 850 F.2d 817, 819 (1st Cir. 1988), *quoting United*

*States ex rel. Kennedy v. Tyler*, 269 U.S. 13, 17 (1925). *See also Rose v. Lundy,* 455 U.S. 509,

518-19 (1982); *Adelson v. DiPaola*, 131 F.3d 259, 261-62 (1st Cir. 1997); *Dougan v. Ponte*, 727

F.2d 199, 202 (1st Cir. 1984); 28 U.S.C. § 2254(b)(1)(A).  The longstanding exhaustion

requirement[3], in addition to ensuring that state courts have the first opportunity to correct their

own constitutional errors made in their proceedings, enables federal courts to accord appropriate

respect to the sovereignty of the states and promotes comity by "minimiz[ing] friction between

our federal and state systems of justice." *Rose*, 455 U.S. at 518.  *See also Duncan v. Henry*, 513

U.S. 364, 365-66 (1995); *Ex parte Royall,* 117 U.S. 241, 251 (1886)(state and federal courts are

"equally bound to guard and protect rights secured by the Constitution"); *Scarpa v. DuBois*, 38

F.3d 1, 6 (1st Cir. 1994), *cert. denied* 513 U.S. 1129 (1995); *Duckworth v. Serrano*, 454 U.S. 1,

3 (1984); *Mele*, 850 F.2d at 819.

It is the petitioner's heavy burden to demonstrate that his now-claimed federal errors

---

[3] The exhaustion requirement is codified at 28 U.S.C. §§ 2254(b) and (c), which preclude
federal habeas review unless "the applicant has exhausted the remedies available in the courts of
the State." 28 U.S.C. § 2254(b)(1)(A).  *See also Mele v. Fitchburg Dist. Ct.*, 850 F.2d 817, 819
(1st Cir. 1988).

7

were fairly presented to the state's highest court. *Nadworny v. Fair*, 872 F.2d 1093, 1098 (1st Cir. 1989). In order to present a claim sufficiently for exhaustion purposes, "a petitioner must inform the state court of *both* the factual and legal underpinnings of the claim." *Scarpa*, 38 F.3d at 6 (emphasis added). The theory that the petitioner advances in his habeas petition must be the same as that relied upon in state court. *Gagne v. Fair*, 835 F.2d 6, 7 (1st Cir. 1987). The exhaustion requirement is not met if there is an intervening change in federal law that casts the legal issue in a fundamentally different light. *Picard v. Connor*, 404 U.S. 270, 275-76 (1971); *Blair v. California*, 340 F.2d 741, 743-44 (9th Cir. 1965); *Pennsylvania ex rel. Raymond v. Rundle*, 339 F.2d 598, 598-99 (3d Cir. 1964).

Here, while the petitioner has raised a Confrontation Clause claim in the SJC, he has never approached the SJC with his argument concerning the alleged relevance of the *Crawford* decision to his claim. *See generally,* Exhibits B-E to the petitioner's supplemental materials. Accordingly, the petitioner has never provided the SJC with the opportunity to determine whether *Crawford* should be applied retroactively to the petitioner's conviction and, if so, whether under *Crawford's* holding the petitioner's Sixth Amendment rights have been violated. Since the petitioner has, therefore, failed to exhaust his state court remedies with respect to his claim, the claim should be dismissed. *See Rose,* 455 U.S. at 518-519; *Mele*, 850 F.2d at 819; *Blair*, 940 F.2d at 743-744.

II.    **The Petitioner's Claim Regarding the Admission of the Disputed Testimony Is a Question of State Law, and Thus Cannot Form the Basis for Federal Habeas Corpus Relief**.

8

The petitioner's habeas petition must be denied because the court's ruling on the question of whether Mr. Monroe's testimony was admissible for a purpose other than the truth of the matter asserted (and was not, therefore, hearsay) was a question of state law, and matters of state law cannot furnish the basis for federal habeas relief. *See Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991); *Lewis v. Jeffers*, 497 U.S. 764, 780, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990).

A.    Standard to be Applied

Errors of state law do not provide a basis for federal habeas corpus relief. *Estelle*, 502 U.S. at 67-68; *Lewis*, 497 U.S. at 780. It is not the province of a federal habeas court to reexamine state court determinations of state law questions. *Lewis*, 497 U.S at 780-81. In other words, this Court does not have jurisdiction in the federal collateral attack of the petitioner's state court conviction to review a claimed error of a State's evidentiary law. A federal court may issue a writ of habeas corpus only when a conviction violates the constitution, laws, or treaties of the United States. *Estelle*, 502 U.S. at 67-68; 28 U.S.C. §§ 2241, 2254. "Even if an error of state law could be sufficiently egregious to amount to a denial of equal protection or of due process of law guaranteed by the Fourteenth Amendment," a federal court may not issue a writ to redress such a deprivation if the claims are merely ancillary to perceived errors of state law. *Pulley v. Harris*, 465 U.S. 37, 41, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984). *See also Adelson v. DiPaola*, 131 F.3d 259, 262 n.3 (1st Cir. 1997); *Hamm v. Latessa*, 72 F.3d 947 (1st Cir. 1995), *cert. denied*, 519 U.S. 947 (1996); *Pitts v. Lockhart*, 911 F.2d 109, 111-12 (8th Cir. 1990), *cert. denied*, 501 U.S. 1253 (1991)(petitioner's claims that he was deprived of due process and equal protection were not grounds for habeas relief where his conviction was obtained in contravention

9

of state law, no matter how "serious and fundamental the error" may have been).

    B.    <u>The Instant Case</u>

    In this case, the petitioner argues that the state courts committed error in finding that Mr. Monroe's statement that the victim had told the petitioner that he (the victim) had killed the petitioner's cousin was properly admitted into evidence.  *See* Petitioner's Memorandum, pp. 8-10.  The SJC has reviewed this claim and found that

> At trial, Monroe testified, over objection, that, hours before being shot, Dallas told the [petitioner], "I am the one who stabbed your cousin."  The [petitioner] argues that this evidence was improperly admitted because there was no evidence that the person Dallas killed was, in fact, the [petitioner's] cousin.  The testimony was not prohibited hearsay because it was not admitted for its truth, but to show the [petitioner's] state of mind and possible motive, *see Commonwealth v. Qualls,* 425 Mass. 163, 167, 680 N.E.2d 61 (1997).  In addition to Monroe's testimony that Dallas communicated the statement to the [petitioner], Monroe testified that, in response to Dallas' statement, the [petitioner] became angry and started pacing, permitting an inference that the [petitioner] had heard Dallas' statement.  A limiting instruction as to the use of the testimony was not requested, *see Commonwealth v. Leonardi,* [413 Mass.] at 764, 604 N.E.2d 23, and its absence does not create a substantial likelihood of a miscarriage of justice.

*Commonwealth v. Qualls,* 440 Mass. at 585.

    The petitioner argues that, despite the fact that the SJC found that the statement was properly admitted for a purpose other than its truth, the jury must have considered the statement "substantively."  *See* Petitioner's Memorandum, p. 9.   However, the question of whether the evidence was properly admitted under the Massachusetts Rules of Evidence is not the question before a federal habeas court.  Rather, federal review is limited to the question of whether admitting the evidence violated the petitioner's constitutional rights.  *See Oliver v. Wood*, 96 F.3d 1106, 1108 (8th Cir. 1996)("We will not re-examine whether evidence was properly admitted under state law . . . . Rather, we consider only the question whether [the petitioner's]

conviction was obtained in violation of the United States Constitution); *Jennings v. Maynard*, 946 F.2d 1502, 1505 (10th Cir. 1991).

Here, the decision as to whether to admit Mr. Monroe's testimony about the victim's statement not for its truth but rather to "show the [petitioner's] state of mind and possible motive" was a question of state law purely within the discretion of trial judge. *See Commonwealth v. Qualls,* 440 Mass. 576, 585 (2003). The SJC's decision upholding the trial judge's evidentiary ruling rests on a determination that the trial judge had correctly applied Massachusetts law regarding hearsay to determine that the statement was not a hearsay statement. *See id.* Accordingly, the SJC's ruling shows that the trial court's decision to admit Mr. Monroe's testimony was a matter of state evidentiary law, not implicating the Constitution. Because the petitioner's challenge to the SJC's decision is, at heart, a challenge to the state court's evidentiary ruling, independent of any federal law question,[4] the petition should be denied. *See Salemme v. Ristaino*, 587 F.2d 81, 85 (1st Cir. 1978) ("[h]abeas relief is unavailable to persons solely on the basis of alleged errors in evidentiary rulings").

---

[4] As is set forth in Section III, below, the petitioner's Sixth Amendment claim under *Crawford* is without merit because there was no hearsay evidence introduced against the petitioner.

11

III.    **The Petitioner's Rights under the Confrontation Clause of the Sixth Amendment Were Not Violated by the Admission of the Testimony about the Victim's Statement to the Petitioner.**

A.    Because the Case upon Which the Petitioner Relies, *Crawford v. Washington*, Was Decided after the Conclusion of the Petitioner's Trial, the Holding of <u>*Crawford* Does Not Apply to the Petitioner's Claims.</u>

Although the petitioner argues that his conviction was unlawful under the holding of *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 1367-69, 158 L.Ed.2d (2004), the *Crawford* case has no bearing on the instant habeas petition.  The *Crawford* case was decided after the SJC's decision, and thus its holding was not available to the SJC at the time the SJC made its ruling.  The question, on habeas review, is whether a Massachusetts court considering the petitioner's claim at the time his conviction became final would have felt compelled by existing precedent to conclude that the rule of law which the petitioner seeks was required by the Constitution.  *Goeke v. Branch*, 514 U.S. 115, 118 (1995)(citations omitted).  If the rule which the petitioner seeks was "not *dictated* by precedent existing at the time the defendant's conviction became final," a petitioner may not rely on this rule of law in support of his habeas petition.  *See Caspari v. Bohlen,* 510 U.S. 383, 390 (1994), *quoting Teague v. Lane,* 489 U.S. 288, 301 (1989)(plurality opinion)(emphasis in original).  The petitioner's claim does not fall into either of the two exceptions carved out from the *Teague v. Lane* doctrine, since the rule in *Crawford* does not place "certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to prescribe," *Teague,* 489 U.S. at 307, nor does it create a "'watershed rule[] of criminal procedure' implicating fundamental fairness and accuracy of the criminal proceeding." *Saffle v. Parks*, 494 U.S. 484, 495 (1990), *quoting Teague*, 489 U.S. at 311-312.  *See also Beard v. Banks*, 542 U.S. 406 (2004)(a rule which qualifies under the second

*Teague* exception "would be so central to an accurate determination of innocence or guilt [that it is] unlikely that many such components of basic due process have yet to emerge"; the Court noted that it had "yet to find a new rule that falls under the second *Teague* exception" and opined that such a rule would need to be of the significance of the case of *Gideon v. Wainwright*, 372 U.S. 335 (1965)(right to counsel)). Therefore, even if the *Crawford* case applied to the facts of the petitioner's claim, the rule set forth in *Crawford* could not be applied to the instant habeas review, since the rule in *Crawford* was not dictated by existing Supreme Court precedent at the time the petitioner's conviction became final.[5]

       B.     The Case upon Which the Petitioner Relies, *Crawford v. Washington*, Does Not <u>Apply Retroactively to the Petitioner's Trial.</u>

The petitioner cannot assert a successful Confrontation Clause challenge to his conviction based on the holding of *Crawford v. Washington*, 124 S.Ct. 1534 (2004), because the *Crawford* case, decided after the petitioner's conviction became final, does not apply retroactively.

Although *Crawford* announces a new rule of law, the rule does not effect a change which implicates "the fundamental fairness and accuracy of the criminal proceeding." *See Murillo v. Frank*, 402 F.3d 786, 790-91 (7th Cir. 2005), *quoting O'Dell v. Netherland*, 521 U.S. 151, 157, 117 S.Ct. 1969 (1997). Every federal circuit court of appeal which has considered this question, save one (the Ninth Circuit), has found that *Crawford* does not apply retroactively. *See Murillo*, 402 F.3d at 789-91; *Dorchy v. Jones*, 398 F.3d 783, 788 (6th Cir. 2005); *Mungo v. Duncan*, 393

---

[5] Moreover, as is discussed in Section IIIC, below, the holding in *Crawford* would not have affected the SJC's decision on this case since *Crawford's* holding governs hearsay evidence and the disputed evidence in this case was not hearsay. *See Commonwealth v. Qualls*, 440 Mass. at 585; *see also* Section II, *infra*.

F.3d 327 (2d. Cir. 2004), *cert. denied sub nom Mungo v. Greene*, 125 S.Ct. 1936 (2005); *Brown*

*v. Uphoff*, 381 F.3d 1219, 1226-27 (10th Cir. 2004), *cert. denied sub nom Brown v. Lampert*, 125

S.Ct. 940 (2005); *Evans v. Luebbers*, 371 F.3d 438, 444-45 (8th Cir. 2004), *cert. denied sub nom*

*Evans v. Roper,* 125 S.Ct. 902 (2005). *Contra Bockting v. Bayer*, 399 F.3d 1010, 1024 (9th Cir.

2005).   Accordingly, this Court should not apply the holding retroactively to the petitioner's

conviction.

    C.    The Case upon Which the Petitioner Relies, *Crawford v. Washington*, Does Not
Apply to the Petitioner's Case Because *Crawford* Discusses Hearsay Testimony,
<u>Which Was Not Present in the Petitioner's Case</u>.

The Supreme Court has recently clarified, in *Crawford*, that the indicia of reliability

necessary for the introduction of hearsay testimony at trial can only be obtained through actual

confrontation of witnesses at trial. *Crawford*, 541 U.S. at 68, 124 S.Ct. at 1374.  However, the

holding in *Crawford* would not have affected the SJC's decision on this case because *Crawford*

addressed the admission of hearsay evidence, while the disputed evidence in this case was not

hearsay. *See Commonwealth v. Qualls*, 440 Mass. at 585.

The Confrontation Clause of the Sixth Amendment is concerned with the long-

established right of an accused person to confront and cross-examine his accuser. *See Crawford*

*v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004)(stating that the Sixth

Amendment is concerned with a criminal defendant's "right . . . to be confronted with the

witnesses against him").   The Supreme Court has recently held that "the Framers [of the

Constitution] would not have allowed admission of testimonial statements of a witness who did

not appear at trial unless he was unavailable to testify and the defendant had a prior opportunity

for cross-examination."  *Id.*, 541 U.S. at 53-54, 124 S.Ct. at 1365.

However, in *Crawford*, the Supreme Court addressed the question of evidence which had been found to be hearsay, not subject to any exception other than its general "reliability." *See Crawford*, 541 U.S. at 36, 124 S.Ct. at 1358. The *Crawford* decision does not address the admission of statements which are not offered for their truth, but rather for some other purpose such as to show state of mind or motive (as was true in the instant case). The *Crawford* case concerned itself wholly with testimonial hearsay. *See Crawford*, 541 U.S. at 53, 124 S.Ct. at 1365 ("even if the Sixth Amendment is not solely concerned with testimonial hearsay, that is its primary object"). *Crawford's* focus on the question of what provides sufficient "reliability" of a statement's truthfulness to allow the introduction of that statement into evidence makes no sense at all in the context of examining a statement which was not offered for its truth. *See generally, Crawford*, 541 U.S. 36, 124 S.Ct. 1354. Since the statement at issue in the petitioner's appeal has been found by the SJC to have been introduced for a purpose other than the truth of the matter asserted, *Crawford* has no applicability to the petitioner's claim, and the petition should be denied.

## IV.    Even If Some Violation of the Petitioner's Rights Did Occur, it Was a Harmless Error in the Context of the Entire Trial.

Even if this Court were to find that the admission of the disputed testimony ran afoul of the petitioner's Confrontation Clause rights, this Court is only empowered to grant the requested writ of habeas corpus "if it finds that the error was not harmless." *See Hill v. Brigano*, 199 F.3d 833, 846 (6th Cir. 1999). In order to find that the admission of the evidence was not harmless, this Court must find that the trial court's error, "considered in light of the record as a whole, 'had [a] substantial and injurious effect or influence in determining the jury's verdict.'"*Levasseur v. Pepe*, 70 F.3d 187, 193 (1st Cir. 1995), *citing Brecht v. Abrahamson*, 507 U.S. 619 (1993). In

15

determining whether a jury was impermissibly influenced by the admission of the disputed testimony, this Court must consider "(1) the extent to which the error permeated the proceeding; (2) the centrality of the issue affected by the error to the case as actually tried and (3) the relative strength of the properly admitted evidence of guilt." *Levasseur*, 70 F.3d at 193, *citing Brecht*, 507 U.S. at 637-39.

In this case, there was a wealth of evidence that the petitioner was the person who shot the victim. As the SJC observed:

> Two witnesses, Monroe and Holmes, positively identified the [petitioner] as the shooter. Buford identified the [petitioner] as the man who approached Carrington's vehicle, and as the man she saw flee the area after hearing gunshots. Carrington's description of the man who approached both the back and side of her vehicle, in some aspects, was consistent with a description of the [petitioner]. Buford's and Carrington's testimony furnished further proof that the [petitioner] was the shooter. *See Commonwealth v. Castro*, 438 Mass. 160, 165, 778 N.E.2d 900 (2002). The Commonwealth also introduced evidence from which the jury could have inferred that the [petitioner] displayed consciousness of guilt, including evidence that he told Holmes to tell Monroe and Buford that they had picked the wrong person, and evidence that he threatened Holmes. *See id.*

*Commonwealth v. Qualls*, 440 Mass. at 582. In addition, there was evidence that the petitioner was, shortly before the murders, involved in a fight with one of the murder victims (Tony, Dallas' brother), in which the petitioner "pulled out a knife and swung it at Tony." *Id.* at 579. Moreover, there was evidence that after Dallas' statement, the petitioner "became angry and started pacing, permitting an inference that the petitioner had heard [and, presumably, been upset by] Dallas' statement." *Id.* at 585. In light of the substantial body of evidence tending to show the petitioner's guilt, the admission of testimony about Dallas' statement to the petitioner, which was not admitted for its truth, was clearly harmless and may not form the basis for habeas relief. *See Brecht*, 507 U.S. at 637-639; *Levasseur*, 70 F.3d at 193.

16

**CONCLUSION**

For the foregoing reasons, the respondent respectfully requests that this Court deny the petition for a writ of habeas and dismiss the petitioner's complaint in its entirety.

Respectfully submitted,

THOMAS F. REILLY
ATTORNEY GENERAL


/s/ Maura D. McLaughlin
Maura D. McLaughlin (BBO # 634923)
Assistant Attorney General
Criminal Bureau
One Ashburton Place
Boston, Massachusetts 02108
(617) 727-2200, ex. 2857

Dated: January 4, 2006


**Certificate of Service**

I hereby certify that on January 4, 2006, I caused a true and accurate copy of the above document to be served via electronic filing and by first class mail, postage prepaid, upon Bradford Bailey, Esq., counsel for the petitioner, at Denner O'Malley, LLP, 4 Longfellow Place, 35th Floor, Boston, Massachusetts, 02114.


/s/ Maura D. McLaughlin
Maura D. McLaughlin

# Commonwealth of Massachusetts
# SUFFOLK SUPERIOR COURT
# Case Summary
# Criminal Docket

## Commonwealth v Qualls, Ronald

Details for Docket: SUCR1992-11850

### Case Information

| | | | |
|---|---|---|---|
| **Docket Number:** | SUCR1992-11850 | **Caption:** | Commonwealth v Qualls, Ronald |
| **Entry Date:** | 11/10/1992 | **Case Status:** | Criminal 2 Ctrm 806 |
| **Status Date:** | 01/25/2001 | **Session:** | Disposed (appeal denied) |
| **Lead Case:** | NA | **Deadline Status:** | Deadline act |
| **Trial Deadline:** | 11/18/1992 | **Jury Trial:** | NO |

## Parties Involved

4 Parties Involved in Docket: SUCR1992-11850

| | | | |
|---|---|---|---|
| **Party Involved:** | | **Role:** | Defendant |
| **Last Name:** | Qualls | **First Name:** | Ronald |
| **Address:** | | **Address:** | |
| **City:** | | **State:** | |
| **Zip Code:** | | **Zip Ext:** | |
| **Telephone:** | | | |

| | | | |
|---|---|---|---|
| **Party Involved:** | | **Role:** | Plaintiff |
| **Last Name:** | Commonwealth | **First Name:** | |
| **Address:** | | **Address:** | |
| **City:** | | **State:** | |
| **Zip Code:** | | **Zip Ext:** | |
| **Telephone:** | | | |

| | | | |
|---|---|---|---|
| **Party Involved:** | | **Role:** | Probation officer |
| **Last Name:** | Cremens | **First Name:** | John |
| **Address:** | Chief Probation Officer | **Address:** | Probation Department |

| | | | |
|---|---|---|---|
| **City:** | | **State:** | |
| **Zip Code:** | | **Zip Ext:** | |
| **Telephone:** | | | |

| | | | |
|---|---|---|---|
| **Party Involved:** | | **Role:** | Witness |
| **Last Name:** | Williams | **First Name:** | James Earl |
| **Address:** | Suffolk County H.C. South Bay | **Address:** | 20 Branston Street |
| **City:** | Boston | **State:** | MA |
| **Zip Code:** | | **Zip Ext:** | |
| **Telephone:** | | | |

## Attorneys Involved

6 Attorneys Involved for Docket: SUCR1992-11850

| | | | |
|---|---|---|---|
| **Attorney Involved:** | | **Firm Name:** | MA02 |
| **Last Name:** | Wechsler | **First Name:** | Pamela J |
| **Address:** | 1 Ashburton Place | **Address:** | Room 2019 |
| **City:** | Boston | **State:** | MA |
| **Zip Code:** | 02108 | **Zip Ext:** | |
| **Telephone:** | 617-727-2200 | **Tel Ext:** | 2827 |
| **Fascimile:** | 617-727-3251 | **Representing:** | |

| | | | |
|---|---|---|---|
| **Attorney Involved:** | | **Firm Name:** | MA130 |
| **Last Name:** | Walker | **First Name:** | Nona E |
| **Address:** | 44 Bromfield Street | **Address:** | Suite 310-A |
| **City:** | Boston | **State:** | MA |
| **Zip Code:** | 02108 | **Zip Ext:** | |
| **Telephone:** | 617-482-6212 | **Tel Ext:** | |
| **Fascimile:** | 617-988-8495 | **Representing:** | Qualls, Ronald (Defendant) |

| | | | |
|---|---|---|---|
| **Attorney Involved:** | | **Firm Name:** | |
| **Last Name:** | Sack | **First Name:** | Steven J |
| **Address:** | 14 Beacon Street | **Address:** | Suite 300 |
| **City:** | Boston | **State:** | MA |

| | | | | |
|---|---|---|---|---|
| **Zip Code:** | 02108 | **Zip Ext:** | |
| **Telephone:** | 617-227-0123 | **Tel Ext:** | |
| **Fascimile:** | 617-227-7025 | **Representing:** | Qualls, Ronald (Defendant) |

| | | | |
|---|---|---|---|
| **Attorney Involved:** | | **Firm Name:** | PETE01 |
| **Last Name:** | Moscardelli | **First Name:** | John M |
| **Address:** | 8 Winter Street | **Address:** | 12th floor |
| **City:** | Boston | **State:** | MA |
| **Zip Code:** | 02108 | **Zip Ext** | |
| **Telephone:** | 617-423-6222 | **Tel Ext** | |
| **Fascimile:** | 617-423-6555 | **Representing:** | Qualls, Ronald (Defendant) |

| | | | |
|---|---|---|---|
| **Attorney Involved:** | | **Firm Name:** | MA112 |
| **Last Name:** | Miller | **First Name:** | Rosalind |
| **Address:** | ****JUSTICE**** | **Address:** | 510 Washington Street |
| **City:** | Dorchester | **State:** | MA |
| **Zip Code:** | 02124 | **Zip Ext:** | |
| **Telephone:** | 617-288-9500 | **Tel Ext:** | |
| **Fascimile:** | 617-288-1212 | **Representing:** | |

| | | | |
|---|---|---|---|
| **Attorney Involved:** | | **Firm Name:** | MARI05 |
| **Last Name:** | Hodge | **First Name:** | David M |
| **Address:** | 121 State Street | **Address:** | Suite 100 |
| **City:** | Springfield | **State:** | MA |
| **Zip Code:** | 01103 | **Zip Ext:** | |
| **Telephone:** | 413-788-4555 | **Tel Ext:** | |
| **Fascimile:** | 413-733-0785 | **Representing:** | Qualls, Ronald (Defendant) |

# Calendar Events

14 Calendar Events for Docket: SUCR1992-11850

| No. | Event Date: | Event Time: | Calendar Event: | SES: | Event Status: |
|---|---|---|---|---|---|
| 1 | 12/04/1992 | 09:30 | Conference: Pre-Trial | 1 | Event continues over multiple c |
| 2 | 01/28/1993 | 09:30 | Hearing: Motion | 1 | Event continues over multiple c |
| 3 | 02/26/1993 | 09:30 | Hearing: Motion | 1 | Event continues over multiple c |

| 4 | 04/01/1993 | 09:30 | Hearing: Misc Matters | 1 | Event held as scheduled |
| 5 | 09/29/1993 | 09:00 | Status: Review by Session | 3 | Event held as scheduled |
| 6 | 11/03/1993 | 09:00 | TRIAL: by jury | 3 | Event held as scheduled |
| 7 | 11/04/1993 | 09:00 | Hearing: Sentence Imposition | 3 | Event held as scheduled |
| 8 | 07/31/1997 | 09:00 | Bail: Review | 3 | Event held as scheduled |
| 9 | 09/04/1997 | 09:00 | Conference: Status Review | 3 | |
| 10 | 10/08/1997 | 09:00 | Conference: Status Review | 3 | Event held as scheduled |
| 11 | 11/24/1997 | 09:00 | Conference: Status Review | 3 | |
| 12 | 01/06/1998 | 09:00 | Conference: Status Review | 3 | Event canceled not re-schedule |
| 13 | 01/06/1998 | 09:30 | Conference: Status Review | 1 | Event held as scheduled |
| 14 | 03/23/1998 | 09:00 | TRIAL: by jury | 2 | Trial begins |

## Full Docket Entries

346 Docket Entries for Docket: SUCR1992-11850

| Entry Date: | Paper No: | Docket Entry: |
| --- | --- | --- |
| 11/10/1992 | 1 | Indictment returned |
| 11/10/1992 | | Notice & copy of indictment sent to Chief Justice & Atty Gen as to |
| 11/10/1992 | | each homicide. |
| 11/10/1992 | | Notice & copy of indictment & entry on docket sent to Sheriff as to |
| 11/10/1992 | | each homicide. |
| 11/10/1992 | 2 | Motion by Commonwealth for arrest warrant to issue; filed & allowed |
| 11/10/1992 | 2 | (Constance M Sweeney, Justice) |
| 11/10/1992 | | Warrant on indictment issued. (Hold warrant for R. Miller/W.Shea, |
| 11/10/1992 | | ADA) |
| 11/13/1992 | | Brought into Court on warrant. |
| 11/13/1992 | | Order of notice with return of service thereon filed as to offenses |
| 11/13/1992 | | #001 and #002. |
| 11/13/1992 | | Deft arraigned before Court |
| 11/13/1992 | | Indictment read as to offenses #001 and #002. |
| 11/13/1992 | | RE offense #1: Plea of not guilty |
| 11/13/1992 | | RE offense #2: Plea of not guilty |
| 11/13/1992 | | Deft waives reading of indictment |
| 11/13/1992 | | RE offense #3: Plea of not guilty |
| 11/13/1992 | | RE offense #4: Plea of not guilty |
| 11/13/1992 | | RE offense #5: Plea of not guilty |
| 11/13/1992 | | Defendant committed to common jail on mittimus without bail without |
| 11/13/1992 | | prejudice. Mittimus Issued. Wilson, AC/M - R. Miller, ADA - D. |
| 11/13/1992 | | McLean, Court Reporter - J. Moscardella, Attorney. |

| | | |
|---|---|---|
| 12/04/1992 | | Defendant not in Court-All motions to be filed by 1/21/93. |
| 12/04/1992 | 3 | Pre-trial conference report, filed. Wilson, AC/M - R. Powers, ADA - |
| 12/04/1992 | 3 | D. McLean, Court Reporter - J. Moscardelli, attorney. |
| 01/20/1993 | 4 | Deft files:assented to motion for an extension of time to file Pre- |
| 01/20/1993 | 4 | trial motions. |
| 01/28/1993 | | Defendant not in Court - motions to be filed by 2/19/93. Wilson, AC/M |
| 01/28/1993 | | A. Miller, ADA - E.R.D. - J. Moscardelli, attorney. |
| 02/19/1993 | 5 | Deft files motion for discovery |
| 06/24/1993 | | Brought into Court. |
| 06/24/1993 | 6 | Motion by Commonwealth: motion to take blood samples and affidavit in |
| 06/24/1993 | 6 | support of. |
| 06/24/1993 | | Motion (P#6) allowed by agreement. Banks J. R. Miller ADA, M. |
| 06/24/1993 | | Wrighton Court Reporter, J. Moscardelli Attorney. |
| 07/12/1993 | | Brought into Court - oral motion to continue for trial by defendant |
| 07/12/1993 | | allowed. Quinlan, J. - R. Miller, ADA - E. Cunio, Court Reporter - J. |
| 07/12/1993 | | Moscardelli, Attorney. |
| 10/25/1993 | | Brought into Court. |
| 10/25/1993 | 7 | Commonwealth files Motion for view |
| 10/25/1993 | | Motion (P#7) allowed . |
| 10/25/1993 | 8 | Commonwealth files Motion in limine to mention evidence of motive in |
| 10/25/1993 | 8 | opening statement. |
| 10/25/1993 | | Motion (P#8) allowed. |
| 10/25/1993 | 9 | Commonwealth files Motion in limine for ruling of statements |
| 10/25/1993 | 9 | reflective of victim's state of mind. |
| 10/25/1993 | 10 | Deft files Motion in limine |
| 10/25/1993 | | Motion (P#10) denied. |
| 10/25/1993 | | Commonwealth moves for trial on Offenses #001,#002,#003,#004 and |
| 10/25/1993 | | #005. Court orders 15 jurors impannelled. Jury sworn. View taken. |
| 10/26/1993 | | Brought into Court. Trial continues. |
| 10/26/1993 | | Motion (P#9) allowed. |
| 10/27/1993 | | Brought into Court. Trial continues. |
| 10/28/1993 | | Brought into Court. Trial continues. |
| 10/29/1993 | | Brought into Court. Jury present. Trial suspended until 11/01/93 Re: |
| 10/29/1993 | | ADA Miller has larengitis. |
| 11/01/1993 | | Brought into Court. Trial continues. Juror Della McLeod excused for |
| 11/01/1993 | | caused after hearing. Trial continues with 14 jurors. |
| 11/02/1993 | | Brought into Court. Trial continues. Commonwealth rests its case in |
| 11/02/1993 | | chief. Defendant rests. |
| 11/02/1993 | 12 | Request for Jury Instructions filed and allowed in substance. See |
| 11/02/1993 | 12 | record |
| 11/02/1993 | 11 | Deft files Motion for required finding of not guilty. |

| | | |
|---|---|---|
| 11/02/1993 | | Motion (P#11) denied after hearing.s, Justice) |
| 11/02/1993 | | Court orders jury reduced to twelve members and designates jurors |
| 11/02/1993 | | Tina Catalfano and Susan Weiner as alternate jurors. |
| 11/03/1993 | | Brought into Court. Jury commences deliberations. Jury question #1 |
| 11/03/1993 | | mark K for identifications. |
| 11/03/1993 | | RE offense 1: Guilty verdict |
| 11/03/1993 | 13 | Verdict affirmed. Verdict slip filed. |
| 11/03/1993 | | RE offense 2: Guilty verdict |
| 11/03/1993 | 14 | Verdict affirnmed. Verdict slip filed. |
| 11/03/1993 | | RE offense 3: Guilty verdict |
| 11/03/1993 | 15 | Verdict affirmed. Verdict slip filed. |
| 11/03/1993 | | RE offense 4: Guilty verdict |
| 11/03/1993 | 16 | Verdict Affirmed. Verdict Slip filed. |
| 11/03/1993 | | RE offense 5: Guilty verdict |
| 11/03/1993 | 17 | Verdict Affirmed. Verdict Slip filed. |
| 11/03/1993 | | Commonwealth moves for sentencing. |
| 11/03/1993 | | Bail set on 11/13/92 revoked and defendant order committed to Common |
| 11/03/1993 | | Jail on a Mittimus without bail. Mittimus Issued. |
| 11/04/1993 | | Brought into Court. |
| 11/04/1993 | | Sentence credit given as per 279:33A: 371days. |
| 11/04/1993 | | Sentence imposed: Re: Offense #001 MCI Cedar Junction for and during |
| 11/04/1993 | | term of his natural life. Mittimus Issued. |
| 11/04/1993 | | Sentence imposed: Re: Offense #004 MCI Cedar Junction Max 10 years - |
| 11/04/1993 | | Min 9 years concurrent with sentence imposed on Offense #001. |
| 11/04/1993 | | Mittimus Issued. |
| 11/04/1993 | | Sentence imposed: Re: offense #005 MCI Cedar Juntion Max 5 years - |
| 11/04/1993 | | Min 3 years concurrent with sentence imposed on Offense #001. |
| 11/04/1993 | | Mittimus Issued. |
| 11/04/1993 | | Sentence imposed: Re: offense #002 MCI Cedar Junction for and during |
| 11/04/1993 | | term of natural life from and after sentence imposed on Offense #001. |
| 11/04/1993 | | Mittimus Issued. |
| 11/04/1993 | | Sentence credit given as per 279:33A: O Days |
| 11/04/1993 | | Notified of right of appeal under rule 64 on case #004,#005. |
| 11/04/1993 | | Notified of right of appeal under Rule 65 |
| 11/04/1993 | | Sentence imposed: Re: Offense #003 Court orders Offense place on file |
| 11/04/1993 | | after a verdict guilty, defendant assenting thereto. Banks J - R. |
| 11/04/1993 | | Miller ADA - M. Wrighton Court Reporter - J. Moscardelli Attorney. |
| 11/05/1993 | 18 | Deft files notice of appeal. |
| 11/05/1993 | 19 | Deft files motion for reduction of sentence. |
| 11/05/1993 | 20 | Deft files motion to withdraw. |
| 11/05/1993 | 21 | Deft files motion for required finding of not guilty. (Banks, J. |

| | | |
|---|---|---|
| 11/05/1993 | 21 | notified with copies) |
| 11/05/1993 | 21 | Deft files appeal to appellate division. (Banks, RAJ - Irwi, CJ and |
| 11/05/1993 | 21 | J. Cremens, CPO each notified) |
| 01/12/1994 | | Copy of notice of appeal mailed to Banks, J and R.Miller, ADA |
| 01/12/1994 | | Court Reporter D.McLean is hereby notified to prepare one copy of the |
| 01/12/1994 | | transcript of the evidence of November 13,1992 for arraignment before |
| 01/12/1994 | | Wilson,AC/M. |
| 01/12/1994 | 22 | Court Reporter M.Wrighton is hereby notified to prepare one copy of |
| 01/12/1994 | 22 | the transcript of the evidence of October 25,26,27,28,29,November |
| 01/12/1994 | 22 | 1,2,3,4,1993 for trial, verdict and disposition before Banks,J. |
| 01/12/1994 | 22 | Certificate of Clerk-filed. |
| 01/13/1994 | | Victim-witness fee paid as assessed in the amount of $50.00. |
| 01/18/1994 | | Defendant not in Court. |
| 01/18/1994 | | Motion (P#20 ) allowed. |
| 01/18/1994 | | Committee for Public Counsel Services Appeals Division appointed. |
| 01/18/1994 | | Wilson, AC/M - ERD. |
| 02/01/1994 | 23 | Deft files pro se: motion for a free trial transcript. Banks, RAJ |
| 02/01/1994 | 23 | notified with copy) |
| 05/11/1994 | | Appeal dismissed - Appellate Division. Travers & McDaniel, JJ. |
| 10/11/1994 | | Transcript received from D.McLean, Court Reporter. |
| 01/24/1995 | | Transcript received from M.Wrighton,Court Reporter. |
| 01/27/1995 | | Transcript received from M.Wrighton, Court Reporter. |
| 01/30/1995 | | Transcript received from M.Wrighton, Court Reporter. |
| 02/27/1995 | | Transcript received from M.Wrighton, Court Reporter. |
| 02/28/1995 | | Transcript received from M.Wrighton, Court Reporter. |
| 03/24/1995 | | Transcript received from M.Wrighton, Court Reporter. |
| 04/21/1995 | | Notice sent to attorneys that transcripts are available. |
| 04/24/1995 | 24 | Certificate of delivery of transcript by Clerk, filed. |
| 04/26/1995 | 25 | Certificate of delivery of transcript by Clerk, filed. |
| 04/28/1995 | | Notice of assembly of record; mailed to SJC Crt per Rule 9(d) |
| 04/28/1995 | | Two certified copies of docket entries, original and copy of |
| 04/28/1995 | | transcript, two copies of exhibit list and list of documents, copy of |
| 04/28/1995 | | notice of appeal and indictments, each transmitted to Clerk of |
| 04/28/1995 | | Appellate Court.(R. Miller, ADA - K. McMahon, ADA - N. Walker, Atty. |
| 04/28/1995 | | for deft.) |
| 08/16/1995 | | Probation supervision fee waived at request of probation officer. |
| 08/16/1995 | | Delvecchio, J. - T. Goodman, Court Reporter. |
| 07/15/1997 | 26 | Rescript rec'd from the Supreme Judicial Court. The judgements are |
| 07/15/1997 | 26 | reversed, and the verdicts are set aside. The cases are remanded to |
| 07/15/1997 | 26 | the Superior Court for a new trial. (P. Wechsler, ADA and N. Walker, |
| 07/15/1997 | 26 | Atty each notified) |

| 07/31/1997 | | Brought into Court. |
| 07/31/1997 | 27 | Commonwealth files Statement of the case. |
| 07/31/1997 | | Motion by Commonwealth that defendant be admitted to bail orally made |
| 07/31/1997 | | and allowed. |
| 07/31/1997 | | Bail set: $15,000 cash. Mittimus Issued, bail warning read. Special |
| 07/31/1997 | | conditions of recognizance: Defendant is to report in person three |
| 07/31/1997 | | times per week to probation department. Lauriat,J- P.Wechsler, |
| 07/31/1997 | | ADA-T.Meany, Court Reporter-S.Sack, Attorney. |
| 08/13/1997 | 28 | Commonwealth files Motion for reconsideration of bail. |
| 08/13/1997 | | Motion (P#28) denied after hearing. Lauriat,J-P.Wechsler, ADA- |
| 08/13/1997 | | S.Garvin, Court Reporter-S.Sack, Attorney. |
| 09/04/1997 | 29 | Deft files motion for costs for an investigator. |
| 09/04/1997 | | Motion (P#29 ) allowed. |
| 09/04/1997 | 30 | Deft files motion for criminal and juvenile records of Commonwealth. |
| 09/04/1997 | | Motion (P#30 ) allowed. Volterra, J. - P. Weschler, ADA - D. McLean, |
| 09/04/1997 | | Court Reporter - S. Sack, Attorney. |
| 10/08/1997 | | Continued until 10/23/97 by agreement. RE: Status. |
| 01/06/1998 | 31 | Deft files Motion fo rcosts of service of summonses |
| 01/06/1998 | | Motion (P#31) allowed. Donovan, J. - P. Weschler, ADA - D. Cullinan, |
| 01/06/1998 | | Court Reporter - S. Sack, Atty. |
| 02/19/1998 | | Defendant not in Court |
| 02/19/1998 | 32 | Commonwealth files Motion regarding witness access |
| 02/19/1998 | | Motion (P#32) allowed (Patrick F Brady, Justice) |
| 02/19/1998 | 33 | Deft files Motion for independent fingerprint examination of |
| 02/19/1998 | 33 | fingerprint evidence |
| 02/19/1998 | | Motion (P#33) allowed (Patrick F Brady, Justice) |
| 02/19/1998 | 34 | Deft files Motion for costs of copies of crime scene photographs in |
| 02/19/1998 | 34 | the possesion of the Commonwealth |
| 02/19/1998 | | Motion (P#34) allowedin the amount of $200 (Patrick F Brady, Justice) |
| 02/19/1998 | 35 | Deft files Motion for costs of cerified copies Commonwealth witness' |
| 02/19/1998 | 35 | convictions |
| 02/19/1998 | | Motion (P#35) allowed up to $200 (Patrick F Brady, Justice) |
| 02/19/1998 | 36 | Deft files Motion for costs fingerprint evidence expert |
| 02/19/1998 | | Motion (P#36) allowed up to $500 (Patrick F Brady, Justice) |
| 02/19/1998 | | Motion (P#32) allowed (Patrick F Brady, Justice) |
| 03/13/1998 | | Brought into Court. Commonwealth's oral motion to revoke bail, after |
| 03/13/1998 | | hearing, allowed |
| 03/13/1998 | | Bail set on 07/31/97 revoked |
| 03/13/1998 | | Mittimus without bail issued to Nashua St. Jail . Brady, J. - P. |
| 03/13/1998 | | Weschler, ADA - B. Urquhart, Court Reporter - S. Sack, Atty. |
| 03/16/1998 | | Defendant not in Court. |

| 03/16/1998 | 37 | Deft files Motion for specific exculpatory evidence, after hearing, |
| 03/16/1998 | 37 | taken under advisement. Brady, J. - P. Weschler, ADA - B. Urquhart, |
| 03/16/1998 | 37 | Court Reporter - S. Sack, Atty. |
| 03/18/1998 | | Motion (P#37) denied in part, allowed in part. as endorsed. (Patrick |
| 03/18/1998 | | Brady, Justice) |
| 03/23/1998 | | Brought into Court |
| 03/23/1998 | 38 | Deft files Motion for examination of jurors |
| 03/23/1998 | | Motion (P#38) allowed in part,denied in part(Patrick F Brady, |
| 03/23/1998 | | Justice) |
| 03/23/1998 | 39 | Deft files Request for preliminary instructions |
| 03/23/1998 | | Motion (P#39) allowed in part, denied in part. |
| 03/23/1998 | 40 | Deft files Motion that the defendant allowed to be provided with |
| 03/23/1998 | 40 | clothes |
| 03/23/1998 | | Motion (P#40) denied (Patrick F Brady, Justice) |
| 03/23/1998 | 41 | Deft files Motion to exclude any police officers from sitting at |
| 03/23/1998 | 41 | counsel table |
| 03/23/1998 | 42 | Deft files Motion to sequester |
| 03/23/1998 | | Motion (P#42) allowed (Patrick F Brady, Justice) |
| 03/23/1998 | 43 | Deft files Motion in limine re: Defendant's statements |
| 03/23/1998 | 44 | Deft files Motion in limine to exhibit evidence of subsequent |
| 03/23/1998 | 44 | misconduct |
| 03/23/1998 | 45 | Deft files Motion in limine to exclude evidence of Defendant's prior |
| 03/23/1998 | 45 | convictions |
| 03/23/1998 | 46 | Deft files Motion in limine -- segment of Murder indictment not to be |
| 03/23/1998 | 46 | read to jury |
| 03/23/1998 | 47 | Deft files Motion in limine re: Mugshots |
| 03/23/1998 | 48 | Deft files Motion in limine to prohibit evidence of hearsay |
| 03/23/1998 | 48 | statements that the Defendant was seeking to harm the decedents |
| 03/23/1998 | | Motion (P#48) allowed (see record) (Patrick F Brady, Justice) |
| 03/23/1998 | 49 | Deft files Motion in limine to prohibit evidence of search of |
| 03/23/1998 | 49 | Cassandra Walker's apartment after the shooting of the decedents and |
| 03/23/1998 | 49 | deferred as endorsed. |
| 03/23/1998 | 50 | Deft files Motion in limine to prohibit testimony by members of the |
| 03/23/1998 | 50 | decedents family |
| 03/23/1998 | 51 | Commonwealth files Statement of case |
| 03/23/1998 | 52 | Commonwealth files Motion in limine regarding demonstrative charts |
| 03/23/1998 | | Motion (P#52) allowed (Patrick F Brady, Justice) |
| 03/23/1998 | 53 | Commonwealth files Motion in limine as to certain handgun allegedly |
| 03/23/1998 | 53 | us ed during murders of Roosevelt Price and Ronald Price, action |
| 03/23/1998 | 53 | deferred. |
| 03/23/1998 | 54 | Commonwealth files Motion in limine to permit primary investigator to |

| 03/23/1998 | 54 | sit in Courtroom |
| 03/23/1998 |    | Motion (P#54) allowed (Patrick F Brady, Justice) |
| 03/23/1998 | 55 | Commonwealth files Motion in limine re: prior bad acts |
| 03/23/1998 |    | Motion (P#55) allowed (Patrick F Brady, Justice) |
| 03/23/1998 | 56 | Commonwealth files Motion for a view |
| 03/23/1998 |    | Motion (P#56) allowed (Patrick F Brady, Justice) |
| 03/23/1998 | 57 | Commonwealth files Motion to allow witnesses to remain in the |
| 03/23/1998 | 57 | Courtroom |
| 03/23/1998 | 58 | Commonwealth files Motion in limine to admit excited utterance |
| 03/23/1998 | 59 | Commonwealth files Motion in limine regarding photographs of victims |
| 03/23/1998 | 59 | Commonwealth moves for trial of 001--005. Court orders jury of 15 |
| 03/23/1998 | 59 | members impanelled. Trial commences with 15 jurors before Brady, J. |
| 03/23/1998 | 59 | D. Pratt, Court Reporter |
| 03/24/1998 |    | Brought into Court. View taken. Trial continues with 15 jurors before |
| 03/24/1998 |    | Brady, J. |
| 03/24/1998 | 60 | Deft files Motion in limine to introduce evidence of statements of |
| 03/24/1998 | 60 | Dallas Price that "Junior Williams would turn against him for Ronnie" |
| 03/24/1998 |    | Motion (P#60) denied (Patrick F Brady, Justice) |
| 03/24/1998 | 61 | Deft files Motion in limine to introduce evidence of statements of |
| 03/24/1998 | 61 | Junior Williams |
| 03/24/1998 |    | Motion (P#61) allowed (Patrick F Brady, Justice) - D. Pratt, Court |
| 03/24/1998 |    | Reporter |
| 03/25/1998 |    | Brought into Court. Juror #7-2 Jay Corcoran excused by Court. Trial |
| 03/25/1998 |    | continues with 14 jurors before Brady, J. |
| 03/25/1998 | 62 | Deft files Motion in limine to prohibit witnesses from mentioning |
| 03/25/1998 | 62 | that there was a prior trial |
| 03/25/1998 |    | Motion (P#62) allowed (Patrick F Brady, Justice) |
| 03/26/1998 |    | Brought into Court. Trial continues with 14 jurors before Brady, J. |
| 03/26/1998 |    | D. Pratt, Court Reporter |
| 03/27/1998 |    | Brought into Court. Trial continues with 14 jurors |
| 03/27/1998 | 63 | At the conclusion of the Commonwealth's case in chief the |
| 03/27/1998 | 63 | Defendant'sa Motion for required finding of not guilty filed. |
| 03/27/1998 |    | Motion (P#63) denied (Patrick F Brady, Justice) |
| 03/27/1998 | 64 | Request for Jury Instructions filed by Commonwealth |
| 03/27/1998 | 65 | Request for Jury Instructions filed by Defendant. D. Pratt, Court |
| 03/27/1998 | 65 | Reporter |
| 03/27/1998 |    | Paper # 63 renewed and denied at the close of all the evidence |
| 03/31/1998 |    | Brought into Court. Trial continues with 14 jurors before Brady, J. |
| 03/31/1998 |    | At the conclusion of the Court's instructions to the jury the names |
| 03/31/1998 |    | of juror #5-12 Emilia Askew and #8-1 Kenneth Delucia are drawn and |
| 03/31/1998 |    | designated as alternate jurors |

| 03/31/1998 |    | RE offense 1: Guilty verdict |
| 03/31/1998 | 66 | Verdict affirmed. Verdict slip filed. |
| 03/31/1998 |    | RE offense 2: Guilty verdict |
| 03/31/1998 | 67 | Verdict affirmed. Verdict slip filed. |
| 03/31/1998 |    | RE offense 3: Guilty verdict |
| 03/31/1998 | 68 | Verdict affirmed. Verdict slip filed. |
| 03/31/1998 |    | RE offense 4: Guilty verdict |
| 03/31/1998 | 69 | Verdict affirmed. Verdict slip filed. |
| 03/31/1998 |    | RE offense 5: Guilty verdict |
| 03/31/1998 |    | Sentence imposed: as to 001 - MCI Cedar Junction Life - Mittimus |
| 03/31/1998 |    | issued. |
| 03/31/1998 |    | Sentence imposed: as to 002 - MCI Cedar Junction - Life from and |
| 03/31/1998 |    | after #001. |
| 03/31/1998 |    | Sentence imposed: as to 004 - MCI Cedar Junction Min. 9 years Max. 10 |
| 03/31/1998 |    | uears concurrent with #001. Mittimus issued. |
| 03/31/1998 |    | Sentence imposed: as to 005 - MCI Cedar Junction Min. 3 years Max. 5 |
| 03/31/1998 |    | years concurrent with #001. Mittimus issued. |
| 03/31/1998 |    | Sentence imposed: as to 003 - Indictment placed on file defendant |
| 03/31/1998 |    | assenting thereto. |
| 03/31/1998 |    | Sentence credit given as per 279:33A: 33 days |
| 03/31/1998 |    | Notified of right of appeal under Rule 64 |
| 03/31/1998 |    | Notified of right of appeal under Rule 65. Brady, J. - P. Weschler, A |
| 03/31/1998 |    | DA - D. Pratt, Court Reporter - S. Sack, Atty. |
| 04/10/1998 | 71 | Deft files notice of appeal. |
| 04/10/1998 | 72 | Withdrawal of appearance filed by Sack. |
| 04/10/1998 |    | Motion (P#72) allowed. Donovan, RAJ - D. McLean, Court Reporter - S. |
| 04/10/1998 |    | Sack, Attorney |
| 04/10/1998 |    | Committee for Public Counsel Services appointed |
| 11/12/1998 |    | Copy of notice of appeal mailed to Brady,J and P. Wechsler, ADA |
| 11/12/1998 | 73 | Letter sent to D.Pratt, Court Reporter for preparation of |
| 11/12/1998 | 73 | transcripts. Certificate of Clerk-filed. |
| 05/21/1999 |    | Transcript received from D.Pratt, Court Reporter. |
| 07/06/1999 |    | Notice sent to attorneys that transcripts are available. |
| 07/19/1999 |    | Certificate of delivery of transcript by Clerk-filed. |
| 07/21/1999 |    | Second notice sent to Attorney D.Hodge for the defendant, Re: |
| 07/21/1999 |    | Transcripts are available. |
| 07/27/1999 | 75 | Certificate of delivery of transcript by Clerk-filed. |
| 07/28/1999 |    | Notice of assembly of record; sent to Clerk of Supreme Judicial Court |
| 07/28/1999 |    | and attorneys for Commonwealth and defendant. |
| 07/28/1999 |    | Two certified copies of docket entries, original and copy of |
| 07/28/1999 |    | transcript, two copies of exhibit list, list of documents, copy of |

| Date | No. | Description |
|---|---|---|
| 07/28/1999 | | indictments and notice of appeal, each transmitted to Clerk of |
| 07/28/1999 | | Appellate Court. (J.Sullivan, ADA - P.Wechsler, ADA D.Hodge, Attorney |
| 07/28/1999 | | for the defendant) |
| 01/25/2001 | 76 | Deft files Appellant's motion for copies of photograph trial exhibits. |
| 01/25/2001 | | Motion (P#76) allowed. Wilson, Mag |
| 01/25/2001 | 77 | Rescript received from SJC; judgment AFFIRMED |
| 07/20/2004 | 78 | Deft files pro se: Motion to waive fees and court costs. (Brady, J |
| 07/20/2004 | 78 | notified w/copy (attached to P#83) and docket sheets) |
| 07/20/2004 | 79 | Deft files pro se: Motion to proceed in forma pauperis and affidavit |
| 07/20/2004 | 79 | in support of (Brady, J notified w/copy (attached to P#83) and docket |
| 07/20/2004 | 79 | sheets) |
| 07/20/2004 | 80 | Defendant's pro se: motion to appoint counsel, filed. (Brady, J |
| 07/20/2004 | 80 | notified w/copy (attached to P#83) and docket sheets) |
| 07/20/2004 | 81 | Defendant's pro se: motion for an evidentiary hearing, filed. (Brady, |
| 07/20/2004 | 81 | J notified w/copy (attached to P#83) and docket sheets) |
| 07/20/2004 | 82 | Defendant's pro se: motion for release from unlawful restraint, for |
| 07/20/2004 | 82 | new trial, for post-trial, discovery and hearings w/affidavit in |
| 07/20/2004 | 82 | support of, filed. (Brady, J notified w/copy (attached to P#83) and |
| 07/20/2004 | 82 | docket sheets) |
| 07/28/2004 | 83 | Commonwealth's notice of appearance and statement of opposition to |
| 07/28/2004 | 83 | the deft's motion for new trial, filed. (Brady, J notified w/copy and |
| 07/28/2004 | 83 | docket sheets) |
| 09/07/2004 | | Motion (P#78) denied as endorsed. Brady, J. 09/03/04. (J. Ditkoff, |
| 09/07/2004 | | ADA and deft pro se notified (attached to P#84) with copy of |
| 09/07/2004 | | endorsement) |
| 09/07/2004 | | Motion (P#79) denied. (J. Ditkoff, ADA and deft pro se notified |
| 09/07/2004 | | (attached to P#84) with copy of endorsement) |
| 09/07/2004 | | Motion (P#80) denied. (J. Ditkoff, ADA and deft pro se notified |
| 09/07/2004 | | (attached to P#84) with copy of endorsement) |
| 09/07/2004 | | Motion (P#82) denied (see Memorandum of Decision this date 09/03/04) |
| 09/07/2004 | | (J. Ditkoff, ADA and deft pro se notified (attached to P#84) with |
| 09/07/2004 | | copy of endorsement) |
| 09/07/2004 | | Finding by Court: Memorandum of Decision denying deft's motion for |
| 09/07/2004 | | release from unlawful restraint, for new trial, and for post trial |
| 09/07/2004 | | discovery and hearings, Brady, J. (J. Ditkoff, ADA and deft pro se |
| 09/07/2004 | | notified (attached to P#84) with copy.) |

## Charges

5 Charges for Docket: SUCR1992-11850

| No. | Charge Description: | Indictment: | Status: |
|-----|---------------------|-------------|---------|
| 1 | Murder, 1st degree | SUDA92-11850 | Guilty verdic |
| 2 | Murder, 1st degree | SUDA92-11850 | Guilty verdic |
| 3 | Dang weapon, possess gun, no license, on person/in MV | SUDA92-11850 | Guilty verdic |
| 4 | Assault, dangerous weapon | SUDA92-11850 | Guilty verdic |
| 5 | Assault & battery, dangerous weapon | SUDA92-11850 | Guilty verdic |

© Copyright, Massachusetts Administrative Office of the Trial Court, 2000 - 2001.