**United States District Court**
**District of Massachusetts**

| | |
|---|---|
| **RONALD QUALLS,** | ) |
| | ) |
| **Petitioner,** | ) |
| | ) Civil Action No. |
| **v.** | ) 05-10888-NMG |
| | ) |
| **LOUIS RUSSO,** | ) |
| | ) |
| **Respondent.** | ) |
| | ) |

**MEMORANDUM & ORDER**

**GORTON, J.**

Ronald Qualls ("Qualls") petitions the Court for a writ of

habeas corpus under 28 U.S.C. § 2254, seeking to vacate his state

court conviction and sentence.

## I.   Procedural History

On November 3, 1993, Qualls was convicted by a state-court

jury of two counts of first-degree murder, assault, battery and

unlawful possession of a firearm.  On June 6, 1997, the Supreme

Judicial Court of Massachusetts ("the SJC") reversed that

conviction on appeal, holding that the trial court should not

have admitted, under the "state of mind" exception to the hearsay

rule, statements by a victim concerning his fear of the

defendant.  Commonwealth v. Qualls, 680 N.E.2d 61 (Mass. 1997).

Without evidence that the defendant knew of the victim's fear,

-1-

the statements were deemed inadmissible as evidence of the
defendant's motive.  Id. at 64-65.  Given that the identity of
the assailant was the only issue disputed at trial, motive was a
critical factor in the determination of guilt thereby warranting
a retrial of the defendant.  Id. at 66-67.

On March 31, 1998, Qualls was convicted by a jury at his
second trial on the above-stated charges and sentenced to life in
prison.  He appealed that conviction, challenging 1) the
sufficiency of the evidence, 2) the trial court's denial of his
motions for a mistrial and curative instruction after a witness
referred to his previous trial, 3) the admission of testimony
from a probation officer who was not listed as a witness and who
made incorrect statements, 4) the admission of an out-of-court
statement as evidence of the defendant's motive despite a lack of
proof that such statement was true, 5) the prosecutor's reliance
upon the truth of the foregoing statement in opening and closing
arguments, 6) the effectiveness of his counsel and 7) the
admission of autopsy photos.

The SJC rejected Qualls's contentions on appeal and affirmed
his conviction.  Commonwealth v. Qualls, 800 N.E.2d 299 (Mass.
2003) (hereinafter, "Qualls II").  His pending petition for
habeas corpus relates solely to the issues presented in subheads
(4) and (5) above, namely, whether constitutional error was
committed with respect to the admission of a victim's out-of-

-2-

court statement and the prosecution's reliance thereon.

## II.   **Factual Background**

Facts pertinent to this case are summarized from Qualls II in which the SJC, in accordance with the appropriate standard of review, recited the facts as the jury could have found them. Petitioner maintains his innocence, denies his involvement in the homicides for which he was convicted and contests any identification suggesting that he was "the shooter".

On October 2, 1992, Leroyal Holmes ("Holmes"), Fred Monroe ("Monroe"), and the two victims, Ronald Price who was known as "Dallas" ("Dallas") and his brother Roosevelt who went by "Tony" ("Tony"), met at a bar in the Roxbury section of Boston.  Qualls was at the same bar with a friend, James Earl "Junior" Williams ("Williams").  Dallas approached the defendant and said that he had heard Qualls was looking for him.  When Qualls responded that he did not know who Dallas was, Dallas replied that he was the person who stabbed the defendant's cousin.  A fist fight between the two ensued in which Tony also became involved.  The fight was broken up by a bouncer and an off-duty police detective who escorted Qualls outside.

Outside the bar, Tony and Qualls renewed their altercation and Qualls pulled a knife and swung it at Tony.  Qualls then got into the front passenger seat of Williams's car and the two drove off.  In the meantime, Tony, Dallas, Holmes and Monroe went to

-3-

another bar where they met up with two women, Donna Carrington ("Carrington") and Mattie Buford ("Buford") in the parking lot. Tony reported to the group that he wasn't feeling well whereupon they discovered that he had been stabbed near his right armpit. He and Dallas got into the back of Carrington's vehicle so that she could drive Tony to the hospital.

Just then, Williams's automobile drove by. Holmes walked toward it whereupon Qualls "popped up" from the vehicle and Holmes grabbed him, telling him to "let it go". Qualls drew a .38 caliber revolver, pointed it at Holmes and verbally threatened him. As Qualls began to move toward Carrington's car, Holmes shouted to the others that the defendant was "strapped", meaning armed. Qualls fired multiple shots into the back of Carrington's automobile and then, from an open window in the front passenger side, fired more shots into the back seat. Both Tony and Dallas were shot. Qualls fled on foot, running past Buford.

Monroe got into Carrington's car and she then drove to Tony's apartment where he was dropped off. Holmes, who had been running behind the car, got in and he and Monroe then drove Dallas to a hospital where he died of a gunshot wound within minutes after arriving. Police and emergency medical workers were dispatched to Tony's apartment. When they arrived, he told them that he had been shot by Williams. Tony was transported to

-4-

a hospital where he also died of a gunshot wound. Of the three .38 caliber bullets recovered from the bodies of Tony and Dallas, at least one from each body had been fired from the same weapon.

Qualls's defense at trial, at which he did not testify, was that Williams was the shooter. In contradiction of that defense, Holmes and Monroe positively identified Qualls as the shooter although Monroe did so only after telling police that he didn't know the shooter's identity. Buford and Carrington did not positively identify Qualls as the shooter but their memories of the event were consistent with that conclusion.

## III. **Discussion**

Qualls contends that the trial court committed constitutional error by admitting (and that the SJC erred by affirming), over his objection, Monroe's testimony that Dallas told the defendant "I am the one that stabbed your cousin". The SJC concluded that that statement was not inadmissible hearsay because it was not offered for the truth of the matter asserted but rather "to show the defendant's state of mind and possible motive". Qualls II, 800 N.E.2d at 306. Monroe had testified that, in addition to Dallas's statement itself, Qualls had responded by growing angry and pacing, "permitting an inference that the defendant had heard Dallas's statement". Id. No limiting instruction was requested but the defendant's trial counsel pointed out in his closing argument that the prosecutor

-5-

had not proved that Dallas actually killed Qualls's cousin.  Id.
at 306-07 & n.8.  The SJC held that Dallas's statement was
properly admitted as evidence of the defendant's motive
notwithstanding lack of evidence that the statement was true.
Id. at 307-08.

Here, Qualls maintains that Dallas's statement was
inadmissible hearsay the admission of which violated his rights
under the Confrontation Clause of the Sixth Amendment as
interpreted by the United States Supreme Court in Crawford v.
Washington, 541 U.S. 36 (2004).  In the Crawford case, the
Supreme Court held that the admission of "testimonial hearsay"
offends the Confrontation Clause unless the declarant is
unavailable and the defendant had a prior opportunity to cross-
examine him or her.  In so holding, the Court expressly overruled
Ohio v. Roberts, 448 U.S. 56 (1980), which had affirmed the
admissibility of such hearsay so long as the statement bore
"adequate 'indicia of reliability'".  Id. at 40 (quoting Roberts,
448 U.S. at 66).

The Commonwealth opposes Qualls's petition on the grounds
that 1) he failed to exhaust his claim in the state courts, 2)
the alleged error is a matter of state, not federal, law, 3) his
allegation of a Crawford violation is untenable because that case
cannot be applied retroactively, 4) even if Crawford were
applicable, the admission of Dallas's statement did not offend

the holding of that case because the statement was not
testimonial hearsay and 5) to the extent petitioner's rights were
violated, the error was harmless overall.

The Court rejects the contentions that petitioner failed to
exhaust state-court review of his claim and that his claim is an
issue of state rather than federal law.  Qualls adequately
presented a Confrontation Clause challenge on appeal and is not
required to have argued the precise issue presented in Crawford,
which was decided one year after petitioner submitted his
appellate brief.  Furthermore, the fact that Qualls challenges a
ruling made pursuant to state evidentiary rules does not prevent
review of that decision under the federal constitution.

The applicability and operation of Crawford require a more
sensitive analysis but ultimately the Court concludes that the
Crawford decision affords no assistance to Qualls.

While the First Circuit Court of Appeals has not formally
considered the retroactive application of Crawford on collateral
review, it expressed doubt about such applicability in an
unpublished, per curiam decision.  See McGonagle v. United
States, 137 F. App'x 373, 380 (1st Cir. 2005).  Of the seven
circuit courts which have addressed the issue directly, all agree
or assume that the Crawford decision stated a "new rule" which is
one of the requirements for retroactivity as explained in Teague
v. Lane, 489 U.S. 288, 306 (1989).  At least five of the seven

-7-

ultimately concluded, however, that the Crawford rule fails to
satisfy one of the other criteria of Teague, namely that
retroactivity be limited to "watershed rules of criminal
procedure".  Id. at 311.[1]  See Mungo v. Duncan, 393 F.3d 327,
335-36 (2d Cir. 2004); Lave v. Dretke, 444 F.3d 333, 335-36 (5th
Cir. 2006); Murillo v. Frank, 402 F.3d 786, 790-92 (7th Cir.
2005); Brown v. Uphoff, 381 F.3d 1219, 1226-27 (10th Cir. 2004);
Espy v. Massac, 443 F.3d 1362, 1367 (11th Cir. 2006).  See also
Dorchy v. Jones, 398 F.3d 783, 788 (6th Cir. 2005) (summarily
asserting Crawford to be inapplicable on collateral review).  But
see Bockting v. Bayer, 399 F.3d 1010, 1016-21 (9th Cir. 2005).

In any event, this Court need not resolve the retroactivity
dispute because Qualls's position is unaided by Crawford
regardless of its retroactivity.  First, Crawford is not
pertinent to Qualls's case because the statement he challenges
was not hearsay.  Qualls contends that the statement was
necessarily considered for its truth because its influence upon
the defendant's motive depended upon whether the statement was
true.  That proposition does not hold water under the
circumstances of this case.  In order for the statement to have

---

[1] Retroactivity is also available where a new rule places
"certain kinds of primary, private individual conduct beyond the
power of the criminal law-making authority to proscribe", Teague,
489 U.S. at 311 (quoted opinion and internal quotation marks
omitted), but the Crawford rule clearly falls outside of that
exception.

-8-

had a bearing on Qualls's motive, the evidence simply had to
support his subjective belief that the statement was, or might
be, true.  That evidence was produced by Monroe's testimony that
Qualls grew agitated in response to Dallas's statement which
implies that he believed the statement might be true and,
consequently, constituted a basis for his motive or state of
mind.

Second, even if Dallas's statement qualifies as hearsay,
Crawford would still be unsupportive because the statement was
not testimonial.  See Crawford, 541 U.S. at 68; Horton v. Allen,
370 F.3d 75, 84 (1st Cir. 2004).  Although the Supreme Court has
not definitively limned the division between testimonial and non-
testimonial statements, it has provided some guidance with
respect to the issue.  See Crawford, 541 U.S. at 51-53, 68.
Examples of testimonial statements include affidavits,
depositions, prior testimony, responses to custodial
interrogation, confessions and, in general, "statements ... made
under circumstances [leading to a reasonable belief that] the
statement would be available for use at a later trial".  Id. at
51-52 (quoting an amicus brief) (internal quotation marks
omitted).

What the aforementioned examples share is a likelihood that
the subject statement was prepared or elicited for trial
purposes.  Dallas's statement clearly fails to meet that

-9-

condition.  Cf. Horton, 370 F.3d at 84 (concluding that statements were non-testimonial where they were "not ex-parte in-court testimony or its equivalent; ... not contained in formalized documents such as affidavits, depositions, or prior testimony transcripts; and ... not made as part of a confession resulting from custodial examination [but rather] ... were made during a private conversation").

## ORDER

For the foregoing reasons, Qualls's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is **DISMISSED**.

**So ordered.**

Nathaniel M. Gorton
United States District Judge

Dated: August *1* , 2006

-10-